UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENISE A. DREIFUERST,

        Plaintiff,

v.                                                 Case No. 18-cv-428-pp

PRESIDENT BARACK OBAMA, *et al.*,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE MAGISTRATE JUDGE CONSENT FORM (DKT. NO. 4), DENYING PLAINTIFF'S PETITIONS AND REQUESTS (DKT. NOS. 6, 11, 18, 22, 26), DENYING ANY FURTHER PROPOSED AMENDMENTS (DKT. NOS. 9, 10, 12, 13, 16, 25, 27) AND DISMISSING CASE AS FRIVOLOUS**

---

The plaintiff, representing herself, filed a complaint on March 16, 2018, suing President Barack Obama and thirty-nine other defendants, dkt. no. 1, along with a request to proceed without prepaying the filing fee, dkt. No. 2. Three days later, the plaintiff filed "amendments" to the complaint. Dkt. No. 3. On March 21, 2018, the plaintiff filed a motion asking the court to appoint a lawyer for her and seeking an extension of time to file her consent form. Dkt. No. 4. (She filed the consent form on April 5, 2018. Dkt. No. 5). Since then, the plaintiff has filed nineteen requests, petitions, letters, proposed amendments or documents. Dkt. Nos. 6, 7-13, 16-20, and 22-27. Judge Lynn Adelman denied the plaintiff's request to consolidate this case with <u>Dreifuerst v. President William J. Clinton, *et al.*</u>, Case No. 18-cv-434 (E.D. Wis.) and with a case

1

dismissed over fifteen years ago, <u>Dreifuerst v. City of Sheboygan Police Dept., et al.,</u> Case No. 01-cv-1189 (E.D. Wis.). Dkt. No. 21.

Although the court finds that the plaintiff does not have enough money to pay the filing fee, it will not allow her to proceed with this case. The court dismisses the case as frivolous, denies the plaintiff's motion for appointment of counsel, denies as moot her request for extension of time to file a magistrate consent form, denies her various requests and petitions and denies all requests for further amendments.

## I.     Plaintiff's Ability to Pay the Filing Fee

The court may allow a litigant to proceed without prepayment of the filing fees if two conditions are met: (1) the litigant is unable to pay the filing fee; and (2) the case is not frivolous or malicious, does not fail to state a claim on which relief may be granted, and does not seek monetary relief against a defendant that is immune from such relief. 28 U.S.C. §§1915(a) and (e)(2).

The court finds that the plaintiff does not have the sufficient income to pay the filing fee. The plaintiff is single and unemployed. Dkt. No. 2 at 1. She receives $827 each month in Social Security benefits plus $56.76 from a pension, totaling $883.76 per month. <u>Id.</u> at 2. She has $670 in a bank account but does not own a vehicle or any other property of value. <u>Id.</u> The plaintiff says that her expenses include $50.04 per month for her cell phone bill and the cost of food; she does not explain how much she spends on food. <u>Id.</u> at 2-3. She says she has no other expenses because of "kickbacks to Clinton/Obama." <u>Id.</u> at 3.

While the plaintiff did not provide the court with enough information to determine how much disposable income she has each month, the court concludes from her limited and fixed income, and the fact that she has no assets, that the plaintiff cannot afford to pay the $350 filing fee and the $50 administrative fee.

## II. Screening of the Plaintiff's Complaint

Even when a court concludes that a plaintiff does not have enough money to pay the filing fee, §1915(e)(2)(B) requires the court to dismiss an unrepresented plaintiff's case filed at any time if the court determines that the case "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." District courts "screen" complaints filed by unrepresented plaintiffs to decide whether they fall into any of these categories.

The federal notice pleading system requires a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff need not plead specific facts, and her statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Even so, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations must rise above a speculative level. Twombly, 550 U.S. at 555 (citation omitted).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). At the screening stage, the court must weigh its assessment of the unrepresented plaintiff's facts in favor of the plaintiff. Denton, 504 U.S. at 32. That said, a court may find an unrepresented plaintiff's complaint factually frivolous if the facts are "clearly baseless," including facts that are "fanciful," "fantastic," "delusional," "irrational," "wholly incredible" or "based on an indisputably meritless legal theory." Id. at 32-33 (quoting Neitzke, 490 U.S. at 325, 327).

A. Facts Alleged in the Complaint

The plaintiff's complaint is filed on the five-page form the Eastern District of Wisconsin provides to non-prisoners who are filing without lawyers. The plaintiff's statement of claim reads as follows:

> President Obama wanted kickbacks. He also wanted to make sure the democrats had their political pungents [sic] put in various positions in the government. He used the military, intelligence, police and other government resources at Obama's disposal. I will list the research that Obama wants kickbacks from. I will include the individuals, corporations, universities, government elites and agencies that Obama used to benefit from my extorted research. I will state how they attacked, threatened, killed, blackmailed. I will list each defendant and want them listed as a separate defendant coming under the federal jurisdiction of U.S. District Court vs. Denise A. Dreifuerst. I will include the who, what, when, where, why. With each defendant provided, I will state the restitution as well as stating that I think these people (defendants under federal jurisdiction) should be charged and prosecuted for abuse of power,

4

> criminal acts, extortion, and organized crime activities. Institutions prospering from the research obtained by the methods described should also be charged and prosecuted and loose [sic] their license and federal monies. I will also show that this is a pattern done by the Democrats for political, financial control, as well as eliminating their democratic colleagues who may differ in opinion.

Dkt. No. 1 at 2-3. For relief, the plaintiff asks

> that charges be brought for corruption of federal laws. I am showing a pattern of this organized crime. I will address relief wanted at a later date as I have to absorb and process the malicious acts taken against me and my family as well as other individuals and families. I can't process this all at once.

Id. at 5.

The plaintiff appears to accuse President Obama of corruption, extortion and various other criminal activities. The complaint itself provides no dates and does not identify any of the "malicious acts" taken against the plaintiff, but the plaintiff attached fifty-six handwritten pages of allegations describing a startling array of actions by over forty individuals. Dkt. No. 1-1. She organizes the allegations by defendant. At the top of each new set of allegations, the plaintiff identifies the defendant and his or her address, then lists for each the actions of that defendant. The defendants range from President Obama to apartment complexes to mental health facilities to police and sheriffs' departments to retail stores to prosecutors to churches to the Social Security Administration to the Salvation Army to the FBI to telephone companies to former government officials to someone who was allegedly in a photograph with President Clinton.

The plaintiff alleges that President Obama had a State Department official stationed outside her residence at 1902 Londonberry Drive in Madison, Wisconsin. Dkt. No. 1-1 at 1, 2. President Obama organized an "onslaught of government agencies" against the plaintiff. Id. People stood outside her door wanting to steal her patent material; others came into her apartment to steal her paperwork, abuse her cat, put things in her food, and replace her red coffee pot with a black one. Id. Meanwhile, President Obama allegedly showed up at the Chicago bus station in June 2017 but left abruptly when someone said "orange means delete" where she last worked. Wearing orange, President Obama allegedly wanted kickbacks. Id. She believes he should be charged with abuse of presidential powers, criminal acts, extortion and organized crime. Id.

The plaintiff accuses Emily Moore of the HUD Sheboygan Housing Authority of setting up a Facebook page without the plaintiff's permission. Id. at 3. Driven by her alleged hatred of Ellie Konetzki, Moore told the plaintiff to prepare for a funeral, unplug her television, and warned plaintiff about dead bodies without organs. Id. Ellie's death signaled to the plaintiff that the democrats wanted more democrats in government positions and more patent material. Id. at 4. She would like all of these (unspecified) people charged with the intentional murder of Ellie Konetzki through "medical hit, extortion, organized crime . . . ." Id.

The plaintiff sues Susan Rice, Loretta Lynch, Mike Koval, Jim Derby, Cheryl Hanson, Norman Davis, William Lynn, John Kirby and John McCain.

6

She alleges that former National Security Advisor Susan Rice, former U.S. Attorney General Loretta Lynch, and Madison Police Chief Mike Koval were present at the Salvation Army at 630 E. Washington Avenue in Madison, Wisconsin. Id. at 22, 24, 31. The plaintiff believes that Rice initiated physical attacks, instructed people to follow the plaintiff and steal her phone and clothes, and ordered military moms to deliver threats through charades. Id. at 22. Lynch allegedly wanted to secure other democrats through organized crime methods. Id. at 24. Koval allegedly refused to stop the attacks at the Salvation Army because the plaintiff is a republican. Id. at 31. In addition, the pastor's wife from Mount Olive Lutheran Church in Madison allegedly appeared at the Salvation Army during an attack and assisted in delivering a threat to the plaintiff. Id. at 14. All remaining individually named defendants allegedly participated in the organized crime perpetuated by the democrats. Id. at 32, 33, 39, 40, and 48.

The only apparent connection between the next set of defendants is that they are all medical providers. The plaintiff believes that democrats use mental health as a means of extortion, forcing people to do research for them. Id. at 7. She quit going to the Journey Mental Health facility in Madison in 2016 because they allegedly wanted her political contacts. Id. The Northeast Family Medical Center in Madison refused to treat the plaintiff for a cough, but then allegedly administered drugs causing the plaintiff intense pain. Id. at 9. The East Clinic at UW Madison allegedly showed the plaintiff an x-ray of a dead person (as previously described by Emily Moore) after the plaintiff went to the

clinic for an untreated cough. Id. at 10. The Texas Health Presbyterian Hospital in Denton, Texas locked its doors and wouldn't let the plaintiff leave; then the hospital allegedly committed the plaintiff against her will. Id. at 44. The Mayvill Hospital in Denton, Texas, allegedly kept her involuntarily and administered the wrong urine test. Id. at 46.

The plaintiff sued seven different businesses and organizations; the court does not know how any of these claims are related. Allegedly, the Dryden Terrace Apartments overcharged the plaintiff, and allowed people to enter her apartment to steal paperwork, change her coffee pot (red to black), and put things in her food to make her sick. Id. at 5. When the plaintiff reported to work at J.C. Penny, the plaintiff discovered listening devices and cameras under the counter and observed various professional entertainers say they want Clinton. Id. at 12. J.C. Penny also listed the plaintiff's last day of work incorrectly and denied her access to the computer. Id. at 13. The plaintiff named the Salvation Army because they targeted republican houses and injected her between her toes. Id. at 21. ATT allegedly used listening devices without her consent; U.S. Cellular took the old SIM card out of her phone. Id. at 23, 49. Gaspers Auto Shop allegedly lied about work done at the shop. Id. at 34. The Downtown Denton Transit Center in Texas gave her wrong information about rates, routes and transfers, and employed a woman from the Madison Salvation Army. Id. at 43. Finally, Boeing Corporation in Illinois employed an engineer who posed as a doctor at the Mayvill Behavior Center in Denton, Texas. Id. at 52-53. The plaintiff then called Boeing Defense, Space and

8

Security in St. Louis about her research for "another wavelength and/or color spectrum/light spectrum." Id. at 54. The plaintiff believes that all of these defendants are tied to organized crime.

The plaintiff has tried report these matters to the police and various federal agencies. The City of Madison Police Department, The Fond Du Lac Police and Sheriff's Departments, and the Capital Police in Wisconsin allegedly refused to help, covered up for others and concerned themselves with the election of democrats. Id. at 8, 11, 15, 17, and 28. The Shaumburg Police Department in Illinois told the plaintiff they could not help when she asked about iPads for the homeless. Id. at 30. The Denton Police Department in Texas wouldn't assist the plaintiff with her allegations about the "aggressors at Texas Presbyterian Hospital" when organized crime individuals allegedly committed her to a mental health facility in Mayvill. Id. at 45. Finally, the Rifle Police Department in Colorado told the plaintiff that the officer no longer worked there after she reported her driver's license missing. Id. at 51.

The plaintiff has also sued federal agencies, including the Sheboygan Social Security, the FBI in Middleton, Wisconsin, the United States Attorney in the Western District of Wisconsin, Wisconsin Department of Veteran Affairs, the Wisconsin Department of Justice in Madison, the Wisconsin Army Guard, and the Wisconsin Air National Guard. The plaintiff allegedly reported SSI abuse by the Salvation Army to the Sheboygan Social Security Office, which responded that they don't investigate that type of allegation. Id. at 18. The FBI allegedly told the plaintiff she was mentally ill. Id. at 19. The United States

Attorney in the Western District of Wisconsin allegedly told the plaintiff not to submit any more information. Id. at 25, 26. The plaintiff reported a suspicious drowning death of a marine and the death of JFK to the Wisconsin Department of Veteran Affairs. Id. at 35. The Wisconsin Department of Justice allegedly refused to believe that the plaintiff's reports actually occurred. Id. at 37. The Army and Air Force National Guard told the plaintiff not to come back after she reported fish jumping out of the water and expressed concerns about the tetonic plates. Id. at 38.

B. Analysis

The court must dismiss this complaint for many reasons. First, the plaintiff has sued some forty-two unrelated individuals on unrelated claims. Fed. R. Civ. P. 18(a) allows a plaintiff to put in a single complaint all the claims that she has against a party. If a person has ten claims against defendant Smith, she can put all ten of those claims in a single complaint against defendant Smith. She cannot include other defendants in that complaint, however, unless she has a claim against all the defendants "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and there is a question of law or fact common to all of the defendants. Fed. R. Civ. P. 20(a). Even liberally construing the complaint, the only question of fact common to all the defendants is the plaintiff's belief that they are democrats or that they are affiliated with President Obama—and a few defendants do not even fit that bill.

10

Second, the plaintiff has not provided the "who, what, when, where and why" information on every claim against every defendant. She rarely provides dates for the events she alleges. Often she fails to explain how the actions of a particular defendant harmed her. Sometimes she fails to identify who harmed her.

Third, many of the actions the plaintiff alleges do not constite violations of federal law or the federal Constitution. She claims that one defendant asked her to have sex with him even though the defendant was married and had a sexually-transmitted disease. Dkt. No. 1-1 at 40. One defendant lied about work done on the plaintiff's car. Id. at 36. One defendant took SIM cards out of her phone. Id. at 49. None of these claims allege violations of the Constitution or laws of the United States.

Fourth, many of the claims are incredible. Allegations of an organized crime syndicate run by President Obama, in which he sent people into her apartment to change out her coffee pot and sent his high-ranking government officials to the Salvation Army in Madison, Wisconsin where she was injected between her toes, are fantastical. The plaintiff claims that someone stole the prototype for Facebook from her residence and gave it to Mark Zuckerberg when he was at Harvard. Id. at 49. She claims that she reported President Kennedy's death when it happened (1963-64), but that the Department of Veterans' Affairs said it was "the Russians, CIA, LBJ, Malcolm X, Hoffa, something with King, and other lies." Id. at 34. She alleges that the Milwaukee Archdiocese was being blackmailed by the Clinton administration. Id. at 25.

11

Although the court perceives that the plaintiff is struggling, and may be ill, that does not require the court to accept "fantastic or delusional factual allegations." Holland v. City of Gary, 503 Fed. App'x 476, 477 (7th Cir. 2013) (citing Neitzke, 490 U.S. at 330).

Finally, the complaint and its attachment do not constitute the "short and plain statement" required by Fed. R. Civ. P. 8(a)(2). A sixty-one-page complaint against forty-two defendants is neither short nor plain.

### III.  Plaintiff's Petitions and Proposed Amendments

Soon after filing the complaint, the plaintiff filed a one-page amendment "adding on" to four sentences in the complaint. Dkt. No. 3. Civil Local Rule 15(a) requires that an amended pleading reproduce the entire pleading as amended; it may not incorporate any prior pleading by reference. Civ. L.R. 15(a)(E.D. Wis.).

The plaintiff filed additional "proposed amendments" on April 9, 11, 12, 13, 16, 25 and May 4, 2018. Dkt. Nos. 9, 10, 12, 13, 16, 25, 27. Each of these documents sought to add defendants (such as NASA, the military, the Cathedral Center, the Salchrest Meat Market, the women who blocked use of the computer in Ripon, white people "disguising themselves as black, Chinese, etc.," and those covering up the Las Vegas Shooting 2017). The plaintiff also requested backpay from the third grade, and incorporated additional requests for documents from the Trump administration, Nancy Pelosi, Chuck Schumer and other government officials. Id.

The plaintiff had the right to amend her complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). That one amendment contained four incomplete sentences; it did not comply with the federal or local rules. Dkt. No. 3. The plaintiff did not ask the court's permission file the seven subsequent proposed amendments, as required by Rule 15(a)(1)(B). Even if the plaintiff had sought leave, the court would not have allowed her to amend, because the amendments suffer from the same defects as the original complaint.

## IV. Plaintiff's Petitions and Requests

On April 6, 2018, the plaintiff filed a "request" to stop all bus drivers from interfering with her travel. Dkt. No. 6. The MTCS bus drivers were allegedly rerouting buses and giving wrong information, which the plaintiff believes was a planned event to discourage her from filing cases. Id. The plaintiff simultaneously asked the court to enjoin the people who say they are security and to require Senator Johnson's office to produce all information regarding those targeted via racketeering to obtain research. Id.

The plaintiff next filed a petition for equal protection under the Fourteenth Amendment, citing "medical hits" at the St. John's Cathedral Shelter and the use of biomedical technology against her. Dkt. No. 7.

On April 11, 2018, the plaintiff asked the court to stop parties involved from taking her phone off-line. Dkt. No. 11. She also asked the court to provide the names of individuals staying at the homeless shelters because she wants to know their connection to her. Id.

13

One week later the plaintiff filed a letter addressed to Senator Johnson, asking that his office to turn over all her correspondence for purposes of Case Nos. 18-cv-428 and 18-cv-434. Dkt. No. 18. She also filed a petition addressed to Judge Adelman seeking to have Robert Mueller "reclused" in her cases because he covered up original threats, attacks and killings. Dkt. No. 20.

The plaintiff next filed a letter asking the court to provide records from the Wisconsin, Texas and Colorado Police Departments who were named as defendants, and the Clayton Police Department in Oklahoma. Dkt. No. 22. She asked the court "for understanding in submitting how targets (as listed) were targeted in this (Rico) racketeering case." Dkt. No. 23.

The plaintiff's most recent request, received on May 4, 2018, asks the court to stay the case until she has an attorney because the "wrong drugs were administered, the wrong diagnosis, as a racketeering method to absolve the vested defendants." Dkt. No. 26. She attached a patient complaint form created by the Mental Health Center of the Community Memorial Hospital in Menomonee Falls, Wisconsin, in which she complains of receiving the wrong medication. Id. at 2. She also attached a page of educational information about schizophrenia. Id. at 3. The court has not heard from the plaintiff since that date.

The court has no factual or legal basis to consider or grant the plaintiff's requests. The plaintiff has not sued the Milwaukee County Transit System or Senator Johnson. The court cannot enjoin a non-party. See Fed. R. Civ. P. 65. Even if the plaintiff had raised valid claims against the defendants she sued, it

14

is too soon for the court to order parties to exchange, or turn over, documents. There is no reason for the court to stay these proceedings, because the plaintiff has not stated valid claims.

**V.     Plaintiff's Motion to Appoint Count and for Extension of Time**

Finally, the plaintiff asked the court to appoint a lawyer to represent her, and to extend the time for filing her magistrate consent form (which she since has filed). Dkt. No. 4. The plaintiff explains that she is trying to "show extorted research via racketeering methods used by the defendants." Id. at 1. She attached a list of her research (including fish behavior, volcanoes, lightening, wasps, bees and ants) and says that she is homeless because of Clinton and Obama. Id. at 2.

On April 9, 2018, the plaintiff filed a letter addressed to Attorney Katie Jelenchik, asking Jelenchik to represent her. Dkt. No. 8. The plaintiff does not say whether she sent this letter to Attorney Jelenchik or received a response. Id.

In a civil case, the court may recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make reasonable efforts to hire private counsel on her own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a person can satisfy this requirement by demonstrating that she has contacted three or more lawyers who declined to represent her. She can demonstrate that she contacted the lawyers by providing the court with (1)

15

the attorneys' names, (2) their addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses. Once the plaintiff demonstrates that she has made reasonable attempts to hire counsel on her own, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the party's ability to try her case, but also at her ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

"[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff has not demonstrated that she tried to find counsel on her own, but that is not the main reason the court will deny the plaintiff's motion. The court has found that the complaint states fantastic, unbelievable claims, that it violates the Federal Rules of Civil Procedure and that it does not allege violations of the federal Constitution or laws. There are no valid claims here with which a lawyer could help the plaintiff. The court must dismiss the case.

**VI.     Conclusion**

The court **GRANTS** the plaintiff's request to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES** as moot the plaintiff's motion for extension of time to file the magistrate consent form. Dkt. No. 4.

The court **DENIES** the plaintiff's petitions and requests. Dkt. Nos. 6, 11, 18, 22, 26. The court **DENIES** the plaintiff's requests to amend the complaint. Dkt. Nos. 9, 10, 12, 13, 16, 25, 27.

The court **ORDERS** that this case is **DISMISSED AS FRIVOLOUS.**

Dated in Milwaukee, Wisconsin this 13th day of March, 2019.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**